

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

FEB 14 2023

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

## DISTRICT COURT

## FOR

## THE NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| SHELIA LEFTWICH | ) | Case No. 1:23-CV-0674 |
| Plaintiff | ) | |
| Vs. | ) | |
| MARIETTA CITY SCHOOL DISTRICT | ) | |
| a/k/a MARIETTA CITY SCHOOLS | ) | |
| Defendant | ) | |

---

### COMPLAINT

---

Comes now the Plaintiff and alleges as follows:

1. Plaintiff is a resident of Cobb County, Georgia and is subject to the jurisdiction of this court.

2. Defendant is the Marietta (Georgia) City School District and is subject to the jurisdiction of this court.

1

3.  This action is brought under Federal question jurisdiction, 28 U.S.C.1331.

4. Under Section 504 of the Rehabilitation Act of 1973 (29 USC 701, et seq.) each school district having 15 or more employees that receives federal financial assistance must designate at least **one employee** to coordinate the district's compliance with its responsibilities under Section 504.

5. Defendant, Marietta City School District met those requirements and is required to have a Section 504 Coordinator.

6. Plaintiff was employed full time as a teacher by the defendant Marietta City School District at Marietta Middle School from 1992 until she retired in 2011.

7. Teachers in the State of Georgia are hired under a contract of employment.

8. Between 2011 and 2017, Plaintiff was re-employed part-time at Marietta Middle School as a teacher for one year, as a stem coordinator for 4 years, and as a substitute teacher for 1 year.

9. Beginning with the 2017 to 2018 school year, and until August 3, 2022, Plaintiff was employed and or worked part time as the Section 504 Coordinator for Marietta Middle School.

## COUNT 1

10. Paragraphs 1-9 are hereby restated and incorporated by reference as if set forth fully herein.

11. Section 504 of the Rehabilitation Act (herein after "Section 504") prohibits retaliation for the purposes of interfering with a right or privilege protected by Section 504, or the laws enforced by the Office of Civil Rights, Department of Education. 34 CFR 104.61, 34 CFR. 100.7(e).

12. As defendant's 504 coordinator, a part of Plaintiff's job was to conduct periodic reviews and adequately document and assure that

eligible students at Marietta Middle School received proper Section 504 services, as required by Section 504.

13. As defendant's 504 coordinator, a part of Plaintiff's responsibilities was to terminate from Section 504 services students at Marietta Middle School who were not, or no longer, eligible for Section 504 services, as required by Section 504.

14. The Marietta City School District required its 504 Coordinators to conduct annual reviews of students receiving 504 services.

15. The dates of review varied according to when the students began receiving Section 504 services.

16. During Plaintiff's annual review in April 2022 of a student who had first matriculated to Marietta Middle School from a Marietta City School District elementary school in August 2021, Plaintiff determined that there was no documentation for one student who was receiving and had received Section 504 services for at least the past 3 years.

17. Plaintiff contacted the parent and was told by the parent that no one had ever asked her for documentation.

18. Unknown to Plaintiff at the time of the initial contact, the parent was the Chair of the Marietta School District Board of Education.

19. Because there was no documentation and the parent denied having been previously asked for documentation, Plaintiff also consulted Defendant's Chief of Special Services and Educational Supports for help determining how to proceed.

20. The school psychologist evaluated the child and advised that he could not document the child's need for Section 504 services.

21. In May 2022, during a required Section 504 annual review meeting, Plaintiff, as Defendant's Section 504 coordinator, informed said parent that the accommodation of her son would be changed beginning with the next school year because she could not document the need for Section 504 services.

22. The parent let it be known that she was unhappy with the decision.

23. The Defendant school district provided a formal means to appeal said decision, but the parent did not formally appeal.

24. The spring school term ended in May 2022 and did not resume until July 26, 2022.

25. Prior to July 2022, Plaintiff was required to perform her work at the school.

26. On July 19, 2022, Plaintiff was presented, on behalf of the principal, with two contracts to sign in order to work partly from home.

27. One contract was for the period 7/26/2022 and ending 09/30/2022.

28. The second contract was for the period 10/01/22 and ending 06/30/2023.

29.  Plaintiff started the responsibilities of her position for the 2022-2023 school year on July 26, 2022.

30. On July 27, 2022, Plaintiff was sent for refresher training for the Section 504 position.

31. On or about July 29, 2022, the school superintendent, sent out an email to staff, including Plaintiff, to welcome her and other staff back to school for the 2022- 2023 term.

32. On August 3, 2022, Plaintiff was emailed and then called by the principal, who in essence stated that she was surprised, and advised that the Board did not accept her contract of employment.

33. The first meeting for the 2022-2023 school year to potentially begin the process to remove the student from said Section 504 services was tentatively scheduled for the next day, August 4, 2022.

34. The Board's agenda and minutes for its meeting on July 19 and August 6, 2022 made no reference to Plaintiff's contract having come before the Board.

35. Plaintiff emailed the Superintendent and Board members seeking an explanation of why her contract of employment was not accepted.

36. One Board member responded that it was not appropriate for Board members to directly engage in personnel matters.

37. The Superintendent emailed saying he was referring the question to the District's Human Resource Officer for response.

38. The District's Human Resource Officer responded that the principal no longer wanted the Plaintiff in the building.

39. Plaintiff again emailed the school district's superintendent for further explanation. The Superintendent responded in writing stating that the principal, the Chief of Special Services and Educational Supports and himself made the decision.

40. The response referenced in paragraph 39 above further directed that all further communication on this topic be with the superintendent and cautioned that further allegations that this was retaliation could potentially cause Plaintiff to be liable.

41. Plaintiff was not given any other reason as to why her contract was terminated.

42. Shortly thereafter, the defendant began advertising for a Student Services Facilitator-part time.

43. The Student Services Facilitator position is another name for the Section 504 coordinator position and is the exact same position with the same duties and responsibilities.

44. The decision to terminate Plaintiff's contract was in retaliation for Plaintiff attempting to fulfill her obligation under Section 504 to properly document the need for Section 504 services, and also constituted interference with Plaintiff's obligations under Section 504 to properly document the need for Section 504 Services.

## COUNT 11

45. Paragraphs 1-44 are hereby restated and incorporated by reference as if set forth fully herein.

46. Upon information and belief, the child's Section 504 services have been continued without documentation for the 2022-2023 school year.4

47. Said continuing to provide Section 504 Services to an ineligible student constitutes a continuing violation of Section 504 of the Rehabilitation Act.

## COUNT III

48 Paragraphs 1-44 are hereby incorporated by reference as if set forth fully herein.

- 49. The caution referenced in Paragraph 40 above that further allegations of retaliation could potentially cause her to be liable was an attempt to intimidate the Plaintiff from further exercising

her Civil Right to raise a complaint of retaliation in violation of her

rights under Section 504 of the Rehabilitation Act of 1973, 34CFR

104.61 (incorporating the retaliation language of the regulations

under Title VI of the Civil Rights Act of 1964, 42 U.S.C. 2000d,et

seq.)

## COUNT IV

50. Paragraphs 1- 44 are hereby incorporated by reference as if set

forth fully herein.

51. Defendant's contracts were for definite terms beginning

7/26/2022 and ending 09/30/2022, and 10/01/22 and ending

06/30/2023, respectfully.

52. Plaintiff had been employed with defendant in the position of

Section 504 Coordinator since 2016, and in spite of the change in

the type of contract had a reasonable expectancy of continuing in

the job.

53. Thus, defendant's abrupt termination of Plaintiffs employment without cause violated her constitutional right to due process.

## COUNT V

54. Paragraphs 1-44 are hereby incorporated by reference as if set forth fully herein.

55. The Georgia Fair Dismissal Act, O.C.G.A. 20-2-940, provides the "Grounds for termination or suspension of a contract of employment of a teacher, principal, or other employee having a contract for a definite term with a school district.

56. The grounds for termination under the Georgi Fair Dismissal Act are: (1) Incompetency; (2) Insubordination; (3) Willful neglect of duties; (4) Immorality; (5) Inciting, encouraging, or counseling students to violate any valid state law, municipal ordinance, or policy or rule of the local board of education; (6) To reduce staff due to loss of students or cancellation of programs; (7)

Failure to secure and maintain necessary educational training; or

(8) Any other good and sufficient cause.

57. The Georgia Fair Dismissal Act requires an employee having a
contract of employment for a definite period, among other things,
to be given written notice of the cause or causes for his/her
discharge, suspension, or demotion in sufficient detail to enable
him/her fairly to show any error that may exist therein and the
names of the known witnesses and a concise summary of the
evidence to be used against him/her.

58. Plaintiff was employed by the Marietta City School District as
a teacher, stem coordinator, substitute teacher, and Section 504
coordinator, from 2011 to 2021 under a customary teacher's
contract.

59. Beginning with the school year August 2021 to July 2022,
Defendant changed Plaintiff's contract to make Plaintiff
responsible for her own taxes.

60. On July 19, 2022, Plaintiff was presented with two contracts to sign in order to work partly from home.

61. The two contracts presented to Plaintiff were for definite terms.

62. The contracts presented to Plaintiff to sign in July 22, purported to change Plaintiff's position from an employee to an independent contractor but the employment relationship did not change.

63. Plaintiff did not suddenly go into business for herself.

64. Plaintiff did not obtain a vendor number with the state.

65. Under the contracts Plaintiff's pay was specified at an hourly rate not to exceed a certain total amount.

66. The hourly rate specified was based upon Plaintiff's prior salary, the year before the contracts were presented to her, being converted into an hourly rate not to exceed 21 hours weekly.

67. Plaintiff was not given an opportunity to negotiate the two contracts signed in July 2022.

68. Defendant's control over Plaintiff did not change.

69. Plaintiff had no investment in the work other than her time.

70. The work Plaintiff performed was a key aspect of the regular business of the defendant.

71. Plaintiff remained an employee under the law.

72. Thus, Defendant violated the Georgia Fair Dismissal Act by failing, among other things, to give written notice of the cause or causes for her discharge in sufficient detail to enable her fairly to show any error that may exist therein, and the names of the known witnesses as required by the Georgia Fair Dismissal Act.

## COUNT VI

73. Paragraphs 1-44 and 51-72 are hereby incorporated by reference as if set forth fully herein.

74. Said termination of Plaintiff's employment and or contracts was malicious and performed to prevent it from being disclosed that the purposes of Section 504 were being defeated by granting Section 504 services to another not entitled to said services.

## COUNT VII

75. Paragraphs 1-44 and 51-72 are hereby incorporated by reference as if set forth fully herein.

76. Plaintiff is a retired school teacher of the Defendant school district, and a former teacher of the year, and had been reemployed part time as its Section 504 coordinator since 2016.

77. On July 19, 2022, she was presented with two contracts to sign under the pretense that it was in order to allow her to work from home.

78. The contracts were for definite terms.

79. Plaintiff's abrupt termination on August 3, 2022, less than 18 days later, was a Breach of Defendant's covenant to enter and perform contractual obligations "in good faith and with fair dealing".  See, TechBios Inc. v. Champagne, 301 Ga.App. 592 (2009).

## COUNT VIII

80. Paragraphs 1-44 and 51-72 are hereby incorporated by reference as if set forth fully herein.

81. Plaintiff is a retired school teacher of the defendant school district and had been reemployed part time as its Section 504 coordinator since 2016.

82. On July 19, 2022, she was presented with contracts to sign under the pretense that it was in order to allow her to work from home.

83. The contracts were for definite terms.

84. Plaintiff's abrupt termination on August 3, 2022, less than 18 days after entering into said contracts constituted a breach of Defendant's private duties to Plaintiff under O.C.G.A. 51-1-8 to, among other things, deal with Plaintiff in good faith and fair dealing, and comply with the Georgia Fair Dismissal Act.

85. Said failures caused Plaintiff to suffer loss of income and other damages.

## COUNT IX

86. Paragraphs 1-44 and 51-72 are hereby incorporated by reference as if set forth fully herein.

87. Defendant's contracts were for definite terms beginning 7/26/2022 and ending 09/30/2022, and 10/01/22 and ending 06/30/2023, respectfully.

88. The termination of Plaintiff's contracts of employment constituted an unlawful Breach of Contract by the defendant.

## COUNT X

89. Paragraphs 1-44 and 51-72 are hereby incorporated by reference as if set forth fully herein.

90. Plaintiff published to others a few days before her termination that she would be back as the Section 504 Coordinator for the 2022-2023 school year.

91. By abruptly terminating Plaintiff within a few days of said publication, Defendant defamed the Plaintiff and damaged her good name by imputing to others that she was abruptly terminated for one or more of the reasons specified in the Georgia Fair Dismissal Act.  O.C.G.A. 20-2-940. See also, O.C.GA 51-5-4(a)(1).

## COUNT XI

92. Paragraphs 1-44 and 51-72 are hereby incorporated by reference as if set forth fully herein.

93. As a result of Defendant's retaliatory and abrupt Breach of Contract, Plaintiff suffered pain and suffering and great emotional distress.

## COUNT XII

94. Paragraphs 1-44 and 51-72 are hereby incorporated by reference as if set forth fully herein.

95. Plaintiff in reliance upon her expected earnings for the school terms beginning July 26, 2022 and ending June 30, 2023, committed to certain obligations based upon her expected salary for the school year.

96. As a result of defendant's Breach of Contract, Plaintiff suffered consequential damages in the amount of $25,000.00.

## COUNT XIII

97. Paragraphs 1- 44 are hereby incorporated by reference as if set forth fully herein.

98. The decision to interfere with Plaintiff's obligations under Section 504 of the Rehabilitation Act and thereby not document preferential treatment of a School Board members son, violates The Professional Teaching Practices Act of Georgia.  O.C.GA. 20-2-790, et seq., particularly Standards of conduct 1,2,3 and 7, thereunder.

Whereas, Plaintiff prays for:

1. Trial by Jury

2. Punitive damages in the amount of $500,000.00 for Counts I-IX.

3. Special damages in the amount of $27,000.00 for the value and Breach of contracts under Count 8.

4. Compensatory damages in the amount of $500,000.00 to compensate Plaintiff for defamation to name and for pain and suffering and emotional distress per Counts X and XI.

5. Consequential damages in the amount of $25,000.00 per Count XII.

6. That Defendant be required to publish an admission of retaliation against Plaintiff and that those proven to have been involved in the unlawful actions (see paragraph 39 above) be required to provide plaintiff with written recommendations and admissions of the retaliation in order to help her get another job.

7. Costs and Attorney fees.

8. Any other relief to which Plaintiff might be entitled and or for which the court deems appropriate.

Respectfully submitted:

Glenn M. Embree, Attorney

State Bar No. 247175

737 Walden Blvd.

Atlanta, Ga. 30349

(404) 895-2196

Email: gbe1999@att.net, Fax: n/a